**In re Barry LENOIR, Respondent,**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 91–867.**

District of Columbia Court of Appeals.

Submitted Jan. 23, 1992.
Decided March 3, 1992.

Before TERRY, FARRELL and WAGNER, Associate Judges.

PER CURIAM:

This matter is before the court for consideration of the Report and Recommendation of the Board on Professional Responsibility that respondent, Barry Lenoir, be disbarred for numerous violations of disciplinary rules in connection with his representation of four clients. Lenoir has not contested the Board's recommendation.[1] The Board recommended that the disbarment be served consecutively to an eighteen month suspension imposed by this court on January 17, 1991, with the requirement that respondent prove fitness before reinstatement. *See In re Lenoir*, 585 A.2d 771 (D.C.1991) (*Lenoir I*).[2]

■ In making the present recommendation, the Board adopted the findings of fact and conclusions of two Hearing Committees.[3] We have reviewed the Board's findings and conclude that they are supported by substantial evidence in the record;

---

**1.** Respondent filed an answer to the petition only in the matter heard by Hearing Committee Number Two. He appeared *pro se* the first day of the hearing, but he failed to return the second day. Respondent appeared a half hour late to the hearing before Hearing Committee Number Four, and he requested and was granted a postponement. Respondent failed to appear at the rescheduled hearing.

**2.** In *Lenoir I*, respondent was found to have violated the following disciplinary rules involving three different clients: DR 6–101(A)(3) (neglect) (3 counts); DR 9–103(B)(2) (failure to

secure client's property); DR 1–102(A)(4) (dishonesty) (2 counts); DR 7–101(A)(1) (intentional failure to pursue client's objectives); DR 7–101(A)(2) (intentional failure to carry out a contract of employment); DR 1–102(A)(5) (conduct prejudicial to the administration of justice by failing to cooperate with Bar Counsel) (2 counts); and DR 7–102(A)(5) (knowingly making a false statement). 585 A.2d at 774.

**3.** Disciplinary proceedings against respondent were heard by two separate Hearing Committees.

therefore, we accept them. D.C.Bar R. XI, § 9(g) ("the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record"); *see also In re Herndon*, 596 A.2d 592, 597–98 (D.C.1991). Although the final determination rests with the court, considerable deference is given to the Board's recommendation. *Lenoir I, supra*, 585 A.2d at 774. Under D.C.Bar R. XI, § 9(g), the court adopts the recommended disposition of the Board unless the proposed recommendation would tend to foster inconsistent dispositions for comparable conduct or would be unwarranted otherwise. *See In re Addams*, 579 A.2d 190, 192 n. 3 (D.C.1990) (en banc); *In re Haupt*, 444 A.2d 317, 317 (D.C.1982). In making the ultimate determination, we consider "the nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public." *Lenoir I*, 585 A.2d at 774; *see also In re Hutchinson*, 534 A.2d 919, 924 (D.C.1987) (en banc). Having considered these relevant factors, we are persuaded that the Board's recommendation of disbarment is warranted.

## I.

■ Respondent was found to have violated the following disciplinary rules in the manner indicated in connection with his representation of Norman McCoy:[4] DR 1–102(A)(5) (conduct prejudicial to the administration of justice by failing to respond to Bar Counsel's requests and to appear at specified times previously agreed to); DR 9–103(B)(4) (failure to deliver to his client records, checks and other documents to which the client was entitled); DR 9–103(B)(3) (failure to maintain complete records of client funds coming into his possession and failure to render accounts for the client's rental income, expenses and royalties due a decedent's estate, and for an alleged investment by the estate in re-

spondent's business venture); DR 9–103(A) (two counts of failure to deposit client and estate funds in separate, identifiable accounts); DR 6–101(A)(3) (neglect of a legal matter entrusted to him, *i.e.*, failure to collect rent and a security deposit on the client's real estate, to take action to evict a nonpaying tenant, to pay the mortgage or inform his elderly client of accumulated arrearages on the client's real property for which respondent was responsible, and to close the property's escrow account, resulting in service charges); DR 5–104(A) (conflict of interest by persuading the client to invest estate assets in respondent's business venture without informing him of the risks or advising him to seek independent advice of counsel); DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation by: (1) making false certifications on a personal financial statement in application for a bank loan, and (2) withdrawing funds from an estate for claimed legal fees without authorization or evidence of the alleged services in spite of requests from Bar Counsel for the latter).

The violations considered by Hearing Committee Number Four involve three clients. In the first matter, respondent was retained to represent Mr. and Mrs. James Pace, Sr., in connection with an automobile accident. Respondent filed the complaint after expiration of the statute of limitations. Although respondent assured his clients that he was pursuing their claims, and at one point that a $20,000 settlement was imminent, records in the court file disclosed no evidence that the summons and complaint were ever served, and the case was dismissed.[5] The clients relied to their detriment on respondent's assurances, and subsequently he also failed to answer their letters and return phone calls. Respondent also failed to pursue his client's claims under their uninsured motorist coverage. Thereafter, he failed to answer Bar Counsel's letter about the matter or to respond to the Board's written order

---

**4.** Hearing Committee Number Two heard the matter involving respondent's client, Norman McCoy.

**5.** The clients learned that respondent also had no malpractice insurance.

requiring a written response to the complaint. Thus, respondent was found by the Board to have violated DR 6–101(A)(3) (neglect); DR 7–101(A)(1) (intentional failure to seek client's lawful objectives); and DR 1–102(A)(5) (conduct prejudicial to the administration of justice).

The Board also found that respondent violated the same disciplinary rules in a matter involving his client, Albert Collins. In the Collins matter, respondent failed to perfect title to real properties purchased by his client at a tax sale, although he repeatedly assured his client he had done so. Again, respondent failed to respond to requests from Bar Counsel or to an order from the Board requiring him to respond to inquiries about the matter.

Finally, respondent was counsel for Dorothy Nichols, Committee[6] for an adult ward. When respondent's client failed to file a final account for the ward's estate, the matter was referred to the Auditor Master (Auditor) of the Superior Court to state an account. Respondent failed to attend the meeting scheduled by the Auditor, although he agreed to provide bank statements and cancelled checks. In spite of this agreement, respondent's subsequent promises, and requests by the Auditor and another attorney involved in the case, respondent did not provide the required information. Thereafter, respondent failed to respond to Bar Counsel's requests in connection with the case or to an order of the Board to produce documents related to it. The Board concluded, and we agree, that respondent's conduct violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice).

## II.

 Respondent's misconduct is serious and extensive. Further, he presented no factors in mitigation of these serious disciplinary violations. Having considered each of the relevant factors for determining sanctions, *see Lenoir I, supra,* 585

A.2d at 774, the Board concluded that disbarment is appropriate. Some of respondent's misconduct in these cases occurred during the same period as that addressed in *Lenoir I,* but respondent's violations persisted after the conduct involved in *Lenoir I* was brought to the attention of Bar Counsel. In making its recommendation, the Board appropriately gave consideration to this fact. When cases are at different stages of the disciplinary process, consideration may be given to what would be recommended if matters were before the Board simultaneously. *In re Thompson,* 492 A.2d 866, 867 (D.C.1985). In cases such as this, involving an attorney's pervasive neglect, dishonesty, disregard of ethical obligations, and misappropriation of client funds, disbarment is appropriate. *See In re Haupt, supra,* 444 A.2d at 317; *see also In re Herndon, supra,* 596 A.2d at 597–98 (disbarment for intentional misappropriation of client funds, dishonesty, commingling, and failing to maintain proper client records); *In re Addams, supra,* 579 A.2d at 191 (disbarment only appropriate sanction in virtually all cases of misappropriation); *In re Godfrey,* 583 A.2d 692, 693 (D.C.1990) (disbarment for misappropriation of funds); *In re Santana,* 592 A.2d 1068, 1069 (D.C.1991) (disbarment for misappropriation of client funds, dishonesty, and intentional failure to seek the lawful objectives of client). The Board's recommendation for disbarment is consistent with prior decisions. Accordingly, it is

ORDERED, that Barry P. Lenoir be, and hereby is disbarred effective from the expiration date of the suspension he is under currently.

---

**6.** The word "Committee" has been used to refer to a person appointed by the court to exercise control over the person or estate of an insane ward. *See* 44 C.J.S. *Insane Persons* § 35 (1945).