In re Peter H. JACOBY, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 285692).

No. 05–BG–1080.

District of Columbia Court of Appeals.

Argued March 12, 2008.
Decided April 3, 2008.

Barry E. Cohen, Washington, with whom Nicole M. Jenkins was on the brief, for respondent.

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, the Office of Bar Counsel.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and FERREN, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

Respondent Peter H. Jacoby was publicly censured by the New Jersey Supreme Court on October 16, 2006. His public censure was based on his acts of domestic violence directed toward his wife. The Board on Professional Responsibility in the District of Columbia instituted reciprocal discipline proceedings and recommended a non-identical sanction of a sixty-day suspension, to which Mr. Jacoby takes exception.

## I. FACTUAL AND PROCEDURAL HISTORY

Peter H. Jacoby is a member of the District of Columbia bar, having been admitted on motion November 23, 1979. He has been on inactive status since March 1980. He was admitted to the New York State Bar in 1975 and the New Jersey Bar in 1987.

On March 5, 2005, Mr. Jacoby was arrested following a physical altercation with his wife at their home in New Jersey. The police had responded to a call and found Mrs. Jacoby "lying on her back on the front walkway." She was "crying and shaking" and grabbed the police officer's hand, clutched it tightly, and said "I'm so scared." Mrs. Jacoby told the officer that her left back and shoulder area had been injured when her husband "grabbed her by the throat with both his hands and began choking her." She explained that they had been discussing their children's future when Mr. Jacoby "became angry for no observable reason. . . ." When Mrs. Jacoby suggested that they have a family discussion, Mr. Jacoby "became more angry and yelled at her for telling him what to do with his children." He choked her and "threw her into the wall." When Mrs. Jacoby asked Mr. Jacoby to go outside (and out of the children's presence) so that they could talk privately and calmly, Mr. Jacoby "grabbed [Mrs. Jacoby] by the throat again and threw her into the wall." Their son confirmed Mrs. Jacoby's account of the events.

Mrs. Jacoby suffered "a dislocated shoulder as a result of the assault [and]

. . . underwent six months of physical therapy before she could return to work, and then only on a part-time basis." Mr. Jacoby was arrested on the scene and charged with "aggravated assault," a crime of the third degree,[1] but this charge was dismissed on August 25, 2005, when Mr. Jacoby entered a guilty plea to a disorderly persons offense[2] for simple assault. Mr. Jacoby was sentenced to probation for one year and ordered to continue psychiatric treatment, and pay $25 per month for supervision, $75 for the Secure Communities Program Assessment, and $50 for the Violent Crimes Compensation Board assessment.

On October 3, 2005, Bar Counsel for the District of Columbia ("Bar Counsel") notified this court of Mr. Jacoby's guilty plea in the underlying criminal matter in New Jersey. The court referred the matter back to Bar Counsel for an investigation on October 18, 2005. *In re Peter H. Jacoby*, No. 05–BG–1080 (D.C. Oct.18, 2005). On May 19, 2006, a Contact Member for the District of Columbia Board on Professional Responsibility ("Board") deferred the disciplinary proceeding under D.C. Bar Rule XI, § 19(d) based upon Mr. Jacoby's guilty plea pending resolution of the New Jersey disciplinary matter.

Following Mr. Jacoby's criminal sentencing in New Jersey, the New Jersey Office of Attorney Ethics moved the New Jersey Disciplinary Review Board ("New Jersey Board") to recommend a three-month suspension of Mr. Jacoby for violating New Jersey Rule 8.4(b), which the New Jersey Board imposed.[3] On October

---

1. In New Jersey, a "crime of the third degree" is equivalent to a felony in the District of Columbia. *See* Title 2C, NEW JERSEY CODE OF CRIMINAL JUSTICE § 43–1 ("Degrees of Crimes").

2. In New Jersey, a "disorderly persons offense" is equivalent to a misdemeanor in the

District of Columbia. *See* Title 2C, NEW JERSEY CODE OF CRIMINAL JUSTICE § 43–8 ("Sentence of Imprisonment for Disorderly Persons Offenses").

3. Both New Jersey Rule 8.4(b) and D.C. Rule 8.4(b) state that it is professional misconduct for a lawyer to "[c]ommit a criminal act that

16, 2006, the Supreme Court of New Jersey upheld the New Jersey Disciplinary Review Board's determination that Mr. Jacoby had violated Rule 8.4(b), but ruled that censure instead of suspension was "the appropriate quantum of discipline." The Supreme Court of New Jersey did not issue an opinion with its order and did not explain why it determined that a non-suspensory sanction was appropriate.

The New York State Bar initiated reciprocal discipline proceedings following Mr. Jacoby's public censure in New Jersey. The Appellate Division, First Department, of the Supreme Court of New York deferred to the New Jersey Supreme Court and imposed identical reciprocal discipline of a public censure. *In re Jacoby*, 42 A.D.3d 196, 837 N.Y.S.2d 118, 118–20 (2007). The United States District Court for the Southern District of New York also publicly censured Mr. Jacoby for his violation of Rule 8.4(b) of the New Jersey Rules of Professional Conduct, which corresponded to the New York Code of Professional Responsibility, DR 1–102(A)(3). *In re Jacoby*, Order of Censure, at 1 (S.D.N.Y. July 11, 2007).

Mr. Jacoby then timely reported his New Jersey discipline to the Office of Bar Counsel for the District of Columbia by letter dated October 23, 2006.[4] Bar Counsel obtained a certified copy of the Supreme Court of New Jersey's order and filed it with the court on November 21, 2006. On December 19, 2006, the court issued an order referring this matter to the Board, and directing Bar Counsel to inform the Board of Bar Counsel's position regarding reciprocal discipline. *In re Jacoby*, No. 05–BG–1080 (D.C. Dec.19, 2006).

On January 10, 2007, Bar Counsel filed its statement regarding reciprocal discipline, which stated that a public censure (the sanction imposed by the Supreme Court of New Jersey) was outside the range of sanctions that would be imposed in the District of Columbia and that the difference between the sanctions was substantial. Therefore, Bar Counsel recommended that a minimum thirty-day suspension be imposed. Mr. Jacoby's counsel filed his Opposition to Bar Counsel's statement, which argued that Bar Counsel lacked standing to recommend discipline greater than that imposed in New Jersey and that identical reciprocal discipline should be imposed because there was no clearly defined range of sanctions for domestic violence in the District of Columbia. Bar Counsel filed a Reply to Mr. Jacoby's Opposition on March 22, 2007.

On May 11, 2007, the Board issued its report, which recommended that Mr. Jacoby be suspended for sixty days and complete a program for domestic abusers. The Board noted that it had the authority to recommend substantially different discipline and found that Mr. Jacoby's violent acts warranted a suspensory sanction.

## II. ANALYSIS

**A. Whether this Court is authorized to impose a greater disciplinary sanction than that imposed in the originating jurisdiction.**

 Mr. Jacoby argues that D.C. Bar Rule XI, § 11(c) does not authorize this Court to impose greater discipline in reciprocal cases than was imposed in the originating jurisdiction because the attorney, and only the attorney, is authorized to prove by clear and convincing evidence that reciprocal discipline should not be

---

reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." New Jersey R. Prof'l Conduct 8.4(b); D.C. R. Prof'l Conduct 8.4(b).

**4.** This satisfied Mr. Jacoby's duty to report under D.C. Bar Rule XI, § 11(b).

imposed. Bar Counsel argues that this interpretation of the Rule ignores other relevant subsections of the Rule and precedent. Because this issue has already been decided by a prior division of this Court, *see In re Drury*, 638 A.2d 60, 62 (D.C.1994), we are bound by that decision. *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971).

■ D.C. Bar Rule XI, § 11 governs reciprocal discipline. Under subsection (c) "Standards for Reciprocal Discipline," it provides that "[r]eciprocal discipline shall be imposed unless the attorney demonstrates ... by clear and convincing evidence" that one of the five enumerated exceptions[5] applies. D.C. Bar Rule XI, § 11(c)(1)-(5). We have held that this rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original jurisdiction." *In re Demos*, 875 A.2d 636, 641 (D.C.2005) (internal citation omitted). The purpose of the presumption is to avoid "an inconsistent disposition involving identical conduct by the same attorney." *Id.* "[A] final determination by a disciplinary court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for purpose of a reciprocal disciplinary proceeding in this Court" unless the Board on Professional Responsibility finds (and this Court accepts) that the first, second, or fifth exceptions apply (i.e., the procedure elsewhere violated due process, there was an infirmity of proof, or

the misconduct elsewhere does not qualify as misconduct in the District of Columbia). D.C. Bar Rule XI, § 11(c)(1)-(5).

■ Nonetheless, we have also held that the "authority of the Board to recommend greater discipline, and of this court to impose it, is well established." *In re Demos, supra*, 875 A.2d at 641; *see also In re Gardner*, 650 A.2d 693, 696 (D.C. 1994) ("the rules do not preclude the Board from recommending the imposition of a lesser or a harsher sanction"). Specifically, addressing this issue in *In re Drury, supra*, 638 A.2d at 62, we held that the basis of this Court's authority to deviate from imposing an identical sanction in a reciprocal proceeding was D.C. Bar Rule XI, § 11(f)(2). In that case, we squarely addressed and rejected Respondent's argument that the September 1, 1989, amendment to D.C. Bar Rule XI divested this Court of authority to impose a greater sanction in a reciprocal proceeding. *In re Drury, supra*, 638 A.2d at 61. We compared the previous version of D.C. Bar Rule XI, § 18(5) (1986) (the court "shall impose the identical discipline unless Bar Counsel or the attorney demonstrates, or the Court finds upon the face of the record upon which the discipline is predicated") with the amended version embodied in D.C. Bar Rule XI, § 11(c) ("[r]eciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence...."). *Id.* at 61–62. We rejected the argument that this Court's authority to impose a greater sanction

---

5. D.C. Bar Rule XI, § 11(c) provides that

[r]eciprocal discipline shall be imposed unless the attorney demonstrates by clear and convincing evidence, that:
(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not,

consistently with its duty, accept as final the conclusion on that subject; or
(3) The imposition of the same discipline by the Court would result in grave injustice; or
(4) The misconduct established warrants substantially different discipline in the District of Columbia; or
(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

than the originating jurisdiction was based on § 11(c) (formerly § 18(5)); instead we held that "our authority to deviate from imposing identical discipline resides in § 11(f) of the revised rule." *Id.* at 62.

Under subsection (f), "Action by the Court," the Rule provides that when an opposition to the Board's recommendation has been timely filed by the attorney, "the Court shall impose the identical discipline unless the attorney demonstrates, or the Court finds on the face of the record on which the discipline is predicated, by clear and convincing evidence, that one or more" of the five exceptions enumerated in subsection (c) [6] applies. D.C. Bar Rule XI, § 11(f)(2). Moreover, we have acknowledged that while it is typically the attorney who urges the application of one of the exceptions, Bar Counsel can rely upon the "substantially different discipline" exception in arguing for a greater sanction. *See In re Coury,* 526 A.2d 25, 26 (D.C.1987) (the "substantially different discipline" provision "may be invoked where the foreign sanction, whatever its form, is effectively either significantly heavier or lighter than that which we would impose for the same misconduct"). "If the Court determines that the identical discipline should not be imposed, it shall enter such order as it deems appropriate, including referral of the matter to the Board for its further consideration and recommendation." D.C. Bar Rule XI, § 11(f)(2).

Since the effective date of the amendment to D.C. Bar Rule XI, we have imposed greater sanctions than the sanctions imposed in the originating jurisdiction under the revised section. *See In re Mahoney,* 602 A.2d 128, 128 (D.C.1992) (suspension "substantially different" from reprimand with probation); *In re Larsen,* 589 A.2d 400, 400 (D.C.

1991) (per curiam) (disbarment "substantially different" from indefinite suspension).

Our prior interpretation of the Rule, which we reaffirm today, is supported by the familiar maxim of statutory interpretation that counsels us to consider the statute as a whole, and, if possible, discern an interpretation that will harmonize and accord full force and effect to all of its provisions, without rendering any part meaningless. *See In re Estate of Phillips,* 532 A.2d 654, 656 (D.C.1987) (internal citation omitted); Norman J. Singer, Sutherland Statutory Construction § 46.05 (6th ed.2000). An attorney will likely invoke the "substantially different discipline" exception argument to argue for the imposition of a lesser—not greater—sanction in the District of Columbia than that which was imposed in the originating jurisdiction.

Then, after a reciprocal proceeding has been initiated in the District of Columbia, we can interpret subsection (f) as authorizing either the attorney to advocate for or this Court to impose non-identical—read: a lesser or harsher—sanction based upon a determination by either clear and convincing evidence by the attorney or from the Court's review of the face of the record that one of the five enumerated exceptions in subsection (c) applies. If we were to read the Rule as Respondent suggests, namely that only an attorney may ever advocate for the imposition of a non-identical sanction, it would render the powers enumerated in subsection (f) a nullity. By adhering to the prior binding interpretation of the Rule, both subsections (c) and (f) retain their individual meaning and purpose as separate provisions of the same rule.

---

**6.** Although the text of D.C. Bar Rule 11(f) refers to the five exceptions enumerated in subsection (b), we have recognized that 11(f) is intended to refer to subsection (c). *See In re Garner,* 576 A.2d 1356, 1357 n. 2 (D.C. 1990) (per curiam).

■ Mr. Jacoby's second argument is that the Board lacks authority under the amended Rule to recommend a greater sanction than that imposed in the originating jurisdiction. This contention is without merit. We have held that § 11(g) of the amended Rule "provides that the Board may recommend a greater sanction to be imposed if the attorney misconduct warrants substantially different discipline in the District." *In re Drury, supra,* 638 A.2d at 62 n. 6. In fact, "[i]t is appropriate for the Board to consider preliminarily whether any of the exceptions to D.C. Bar R. XI, § 11(c) apply." *In re Gardner, supra,* 650 A.2d at 696 (citing *In re Reid,* 540 A.2d 754, 758 (D.C.1988) (interpreting precursor D.C. Bar R. XI, § 18 as vesting authority for Board to *sua sponte* determine if any exceptions applied)).

■ Mr. Jacoby's third argument is that Bar Counsel lacks standing to recommend a greater sanction than that imposed in the originating jurisdiction because, in his interpretation, the language of the amended Rule provides that "only the lawyer may invoke [the] exceptions" to reciprocal discipline. This issue has already been decided and that decision is binding upon us as a division. We previously held that although "the plain language of Rule XI, § 11(c) places the burden on the disciplined attorney to establish by clear and convincing evidence that a lesser sanction is warranted, the Office of Bar Counsel also has standing to object to the imposition of identical discipline and may recommend a different sanction when it believes an exception applies," but "such instances should be rare." *In re Zdravkovich,* 831 A.2d 964, 968–69 (D.C.2003) (citing *In re Reid, supra,* 540 A.2d at 758). For the reasons discussed in the next part of this opinion, this is one of those rare instances.

Therefore, Bar Counsel has standing to seek, and the Board has authority to recommend, a greater sanction than that imposed in the originating jurisdiction, which this Court has the authority to impose.

**B. Whether this Court should adopt the recommendation of the Board and suspend Respondent for sixty days for violating Rule 8.4(b) as non-identical discipline reciprocal to his public censure imposed in New Jersey for his misdemeanor criminal conviction for simple assault.**

Mr. Jacoby argues that because there is no well-established precedent in the District of Columbia upon which to determine the appropriate range of sanctions for his one incident of domestic violence, this Court cannot determine whether the sanction imposed in New Jersey is "substantially different." Therefore, he argues that identical discipline should be imposed. Bar Counsel responds that the range of sanctions imposed for the violation of the same disciplinary rule that Respondent has been charged with reveals that the public censure imposed in New Jersey is outside the range of sanctions and would be substantially different than that which would be imposed in the District.

■ Because this is a question of law, we accord less weight to the Board's determination that the fourth exception (i.e., that Mr. Jacoby's misconduct "warrants substantially different discipline in the District of Columbia") justifies the imposition of a greater sanction in the form of a sixty-day suspension in the District of Columbia instead of the public censure imposed in New Jersey. *In re Gallagher,* 886 A.2d 64, 68 (D.C.2005) (citation omitted).

■ Determining whether the "substantially different discipline" exception warrants a greater or lesser sanction involves a two-step inquiry. "First, we must determine if the misconduct would not have resulted in the same punishment here as it

did in the disciplining jurisdiction." *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990) (citations omitted). "Same punishment" is defined as a sanction "within the range of sanctions that would be imposed for the same misconduct." *Id.* (citations omitted). The sanction need not be one that Bar Counsel would have sought had it been an original proceeding in the District; the sanction need only fall within the range of sanctions possible here in the. District. *See In re Fuller*, 674 A.2d 907, 909 (D.C. 1996). "Second, if the discipline imposed in the District of Columbia would be different from that of the original disciplining court, we must then decide whether the difference is 'substantial.'" *In re Demos, supra,* 875 A.2d at 642.

 First, District of Columbia Rule of Professional Conduct 8.4(b) states that it is professional misconduct for an attorney to "[c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." D.C. R. Prof'l Conduct 8.4(b). Because there is sparse case law in this jurisdiction dealing with Rule 8.4(b), especially in terms of assaultive conduct, "we look beyond case law to help define the extent of the Rule's reach." *In re Harkins*, 899 A.2d 755, 759 (D.C.2006) (determining whether Rule 8.4(b) applied to sexual misconduct by consulting accompanying comment to the Rule). The accompanying Comment 1 to Rule 8.4(b) explains that "[a]lthough a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Of-

fenses involving *violence,* dishonesty, breach of trust, or serious interference with the administration of justice are in that category." D.C. R. Prof'l Conduct 8.4 cmt. 1 (emphasis added). An act of domestic violence falls within the category of proscribed violent conduct. *See In re Painter*, 766 A.2d 49, 49 (D.C.2001) (imposing identical reciprocal discipline of disbarment due to respondent's long history of domestic violence).

 "[A]lthough we must give considerable deference to the Board's recommendations in these matters, the responsibility for imposing sanctions rests with this court in the first instance." *In re Temple*, 629 A.2d 1203, 1207 (D.C.1993). We also recognize that, "[w]ithin the limits of the mandate to achieve consistency, each case must be decided on its particular facts." *In re Haupt*, 422 A.2d 768, 771 (D.C.1980). Therefore, as part of our determination of whether to adopt the Board's recommendation, we "examine[ ] the 'nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public.'" *In re McLain*, 671 A.2d 951, 954 (D.C.1996) (quoting *In re Lenoir*, 604 A.2d 14, 15 (D.C.1992)). We have noted specifically that "[t]he discipline for violation of Rule 8.4(b) has never been as lenient as public censure"[7] and that the sanctions for Rule 8.4(b) "have traditionally ranged from a thirty-day suspension to disbarment." *In re Harkins, supra,* 899 A.2d at 759 (citations omitted) (imposing a thirty-day suspension for a violation of Rule 8.4(b) based upon sexual misconduct).

---

7. In two previous cases, Bar Counsel has issued an informal admonition, which is a lesser sanction than a public censure, for conduct it deemed to have violated Rule 8.4(b). *See In re Murtaugh*, BDN 45–03 (Inf.Adm. Dec. 1, 2003) (drunk driving); *In re Richmond*, BDN

285–98 (Inf. Adm. June 30, 1999) (trespass and resisting arrest). Because this court is not involved in circumstances when Bar Counsel issues informal admonitions as a sanction, this court did not approve these lesser sanctions.

■ In this case, the Board recommended a sixty-day suspension based upon Respondent's conduct. Viewing this sanction in light of our limited precedent on domestic violence and sexual misconduct in the context of Rule 8.4(b) violations, the Board's recommended sanction falls within the range of sanctions: disbarment (for an attorney with a long history of domestic violence), *In re Painter, supra,* 766 A.2d at 49, and a thirty-day suspension (for an isolated incident of misdemeanor sexual abuse), *In re Harkins, supra,* 899 A.2d at 761–62.[8] Mr. Jacoby's conduct was less egregious than that of the attorney who was disbarred in *In re Painter, supra,* 766 A.2d at 49, because Mr. Jacoby's incident of domestic violence was an isolated one and, unlike Mr. Painter, he did not have a "long history of domestic violence."[9] On the other end of the spectrum, Mr. Jacoby's conduct caused his victim physical injuries much greater than the victim of Mr. Harkins's conduct. That greater injury supports the imposition of a sanction greater than the thirty-day suspension imposed on Mr. Harkins, because Mr. Jacoby's wife suffered a dislocated shoulder that required six months of physical therapy, while Mr. Harkins's victim did not suffer any identifiable physical injuries, although there may have been significant emotional trauma. *In re Harkins, supra,* 899 A.2d at 761–62. When we view the sanction in light of the range of the sanctions typically imposed for a violation of Rule 8.4(b), the Board's recommended sanction falls within the range of a thirty-day suspension to disbarment. *See, e.g., In re Soininen,* 783 A.2d 619, 619 (D.C. 2001) (thirty-day suspension for misdemeanor theft and possession of a controlled substance without a prescription); *In re Slattery,* 767 A.2d 203, 203 (D.C. 2001) (disbarment for theft and dishonest deposition testimony in connection with related lawsuit). As we have previously noted, the sanction imposed here in the District of Columbia for a violation of Rule 8.4(b) has never been as lenient as a public censure, which was the sanction imposed by the New Jersey Supreme Court. *In re Harkins, supra,* 899 A.2d at 759 (citations omitted). Therefore, the New Jersey sanction of a public censure falls outside the range of sanctions warranted here in the District of Columbia for the same rule violation.[10]

**8.** In a recent reciprocal discipline case involving a father who struck his teenage son with a truck, we imposed a three-year suspension with a readmission requirement that the respondent prove his fitness to resume the practice of law. *In re Gailliard,* 944 A.2d 1109, 1111 (D.C.2008).

**9.** Mr. Jacoby and Bar Counsel did not raise the issue of mitigation under *In re Kersey,* 520 A.2d 321 (D.C.1987), in their briefs. Both parties acknowledged at oral argument on March 12, 2008, that Mr. Jacoby did not intend to argue mitigation under that theory.

**10.** It is significant to note that the New Jersey Disciplinary Review Board, which was the original investigating and prosecuting body, reviewed the factual record before it and recommended a three-month suspension—a harsher sanction than the one imposed by the New Jersey Supreme Court and the one we impose today. Furthermore, in examining the imposition of the identical discipline of a public censure by the New York State Bar and the United States District Court for the Southern District of New York, we think it important to note that New York accords much greater deference to the originating jurisdiction in terms of sanction and generally imposes the identical sanction based upon the principle that "it is the state where an attorney lived and practiced law at the time of the offense that has the greatest interest in the matter." *See In re Jacoby, supra,* 837 N.Y.S.2d at 119 (citing *In re Dranov,* 14 A.D.3d 156, 787 N.Y.S.2d 271 (2004); *In re Anschell,* 11 A.D.3d 56, 781 N.Y.S.2d 310 (2004)). On the other hand, while we have a rebuttable presumption that we will impose the identical sanction in a reciprocal discipline proceeding, that presumption may be overcome and a different sanction imposed when the misconduct warrants "substantially different discipline" here in the District of Columbia, as Mr.

Second, the difference between the sanctions of a public censure and a sixty-day suspension are "substantial." We have held that "[p]ublic censure is one of the more lenient sanctions that may be imposed on an attorney for professional misconduct" and that the difference between a sixty-day suspension and a public censure is substantial. *See In re Harkins, supra,* 899 A.2d at 761. Further, we explained that "[a]s a lesser penalty, public censure is more appropriate in cases involving only minor misconduct where the attorney has had no prior discipline and there is no indication of substantial or intentional violations." *Id.* (citations omitted). Here, the misconduct caused Mrs. Jacoby to dislocate her shoulder, undergo six months of physical therapy, and resume work on a part-time basis only after that six-month period; it was certainly neither "minor" nor unintentional misconduct on Mr. Jacoby's part. A public censure does not restrict an attorney's ability to practice or earn an income. *See In re Mahoney,* 602 A.2d 128, 131 (D.C.1992). On the other hand, a suspension imposes a much greater burden upon the attorney because during the suspension, "an attorney must close down his practice of law[,] ... [c]lients with immediate needs must be referred to others[,] and little or no income can be expected." *Id.* At oral argument, counsel for Mr. Jacoby acknowledged that

a sixty-day suspension would impair his client's ability to practice and affect his employment while a public censure would not.

Because both parts of the "substantially different discipline" test are met, we hold that the greater sanction of a sixty-day suspension is warranted under D.C. Bar Rule XI, § 11(c)(4).

## III. CONCLUSION

For the foregoing reasons, we adopt the Board's recommendation and order that Mr. Peter H. Jacoby be suspended for a period of sixty days from the practice of law in the District of Columbia, effective immediately.[11] We direct respondent's attention to the requirements of D.C. Bar R. XI, § 14(g), and their effect on his eligibility for reinstatement. *See* D.C. Bar R. XI, § 16(c).

*So ordered.*

---

Jacoby's misconduct does. D.C. Bar Rule XI, § 11(c)(4), (f)(2); *In re Demos, supra,* 875 A.2d at 641. Because the District oversees so many reciprocal discipline proceedings, we are mindful that, based upon our precedent, *In re Painter, supra,* 766 A.2d at 49, and *In re Harkins, supra,* 899 A.2d at 761–62, our sanctions for violations of Rule 8.4(b) for assaultive crimes must reflect the seriousness with which we regard them as bearing upon an attorney's fitness as an attorney in this jurisdiction.

11. At oral argument, Bar Counsel conceded that if Mr. Jacoby provided proof to Bar

Counsel of his completion of a similar program for domestic abusers as part of his probation in the New Jersey criminal proceedings, Bar Counsel would not require Mr. Jacoby to satisfy this part of the recommended sanction. We impose a sixty-day suspension and condition Mr. Jacoby's reinstatement to the District of Columbia bar on his presentation of proof of his compliance with New Jersey's requirement that he attend a program for domestic violence or proof that he has completed a similar program here.